LEON W. SHUMWAY *vs.* HOME FIRE AND MARINE INSURANCE COMPANY OF CALIFORNIA.

Hampshire.   September 21, 1938. — October 28, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Insurance*, Fire: oral contract of insurance, insurable interest, sworn statement of loss, amount of recovery; Agent. *Agency*, Scope of authority, Insurance agent. *Evidence*, Competency. *Contract*, Oral insurance contract. *Damages*, For breach of contract. *Practice, Civil*, Ordering verdict. *Words*, "The building is covered."

At the trial of an action upon an alleged oral contract of fire insurance made with the plaintiff by one licensed by the commissioner of insurance under G. L. (Ter. Ed.) c. 175, § 163, and appointed by the defendant as its agent to issue and countersign policies and to collect premiums, a finding that the agent had authority to make the contract was warranted; and evidence was admissible of statements of the agent to the plaintiff in negotiating the insurance, of an entry by him of a binder upon his order book and of a letter from him to the defendant's special agent respecting particulars of the policy to be issued.

Upon evidence that an authorized agent of an insurance company, after negotiating with the plaintiff, who was seeking fire insurance upon a building which he had purchased for the purpose of moving it, came to terms with him as to the amount of coverage and stated to him, "The building is covered," and entered a binder in his order book, a finding was warranted that the building was covered for a reasonable time under an oral contract of insurance, although the rate of premium and the description of location to be put in the policy had not been determined.

An interest acquired by a purchase, for removal to another location, of a building from a contractor who had made a contract with the landowner to raze it was insurable before such removal.

Even if the provisions of a Massachusetts standard fire insurance policy respecting the giving of a sworn statement of loss forthwith applied in an action upon an oral contract of insurance, a ruling was not required that such a statement, given thirteen days after the loss, was insufficient as a matter of law.

The measure of damages in an action upon an oral contract of insurance . upon a building purchased for the purpose of removal to another location did not depend upon the amount of a partial payment which the insured had made for the building or the price he had paid for certain fixtures therein or the value of labor he had expended thereon.

A general motion that a verdict be ordered for the defendant in an action with a declaration in two counts properly was denied if a verdict for the plaintiff was warranted on either count.

CONTRACT. Writ in the Superior Court dated November 27, 1935. The action was tried before *T. J. Hammond*, J.

*G. B. Rowell*, for the defendant.

*A. D. Morse*, for the plaintiff.

RONAN, J. The plaintiff seeks to recover for a loss by fire upon a building which, he alleges, was insured with the defendant by an oral contract of insurance. The jury returned a verdict for the plaintiff. The defendant excepted to the admission of evidence, to the refusal to direct a verdict, and to the refusal to grant requests for instructions.

In the spring of 1935, the trustees of Smith College entered into a written contract with E. J. Pinney Co. Inc. for the erection of a dormitory upon a site which was then occupied by various buildings, including the house, now in question, numbered 180 Elm Street. The contract required the contractor to raze these buildings, but reserved to the college the right to remove plumbing, electrical fixtures, oil burners and boilers. The plaintiff agreed with the contractor to purchase the house for $250, paying $10 on deposit with the right to pay the balance within ninety days. He was allowed thirty days to remove the building. A receipt, executed by the contractor and setting forth these terms, was given to the plaintiff on April 22, 1935. The plaintiff on May 3, 1935, got a bill of sale of the plumbing, piping and wiring contained in this house from the superintendent of buildings and grounds of the college. The goods

were billed at $50, payment of which was to be on or before July 3, 1935. The plaintiff received the key of the house from the superintendent, and, after taking possession, removed portions of the underpinning, steps, lattice work and a doorway, disconnected the plumbing, removed the steam pipes, and did other work preparatory to moving the building.

The defendant, a foreign corporation, was authorized to transact business in this Commonwealth. One Noble was licensed as its agent under G. L. (Ter. Ed.) c. 175, § 163. The plaintiff had done insurance business with him for eighteen years. About a week before the fire he told Noble he had bought the house and to Noble's suggestion "about putting some insurance on it," the plaintiff said, "You better cover it, take care of it." Noble said, "I think $4000 would be all right." The plaintiff replied, "That's O. K. with me." He met Noble again a few days before the fire, when Noble told him that his policy "will be here in a few days. The building is covered." Noble wrote the defendant's special agent at Hartford on May 14, 1935, recalling that he had spoken to him on the previous Friday about the insurance on this dwelling which was to be moved to Maynard Road. Noble further wrote that he had bound it in the amount of $4,000 and inquired how the location of the property should be described in the policy and if there would be any increase in the rate. Noble had also entered a binder in his order book covering the house in both locations and while in transit for $4,000, subject to the provisions of the standard form of policy.

The building was damaged by fire on May 16, 1935. It was subsequently repaired and moved to its new location. There was evidence that the fair value of the house was $5,500 and that it would cost $2,900 to repair the damage caused by the fire. A sworn statement of the loss was mailed to the defendant on May 29, 1935, and a reference to determine the damage was waived by the defendant. There was a verdict for the plaintiff in the sum of $1,798.50. In answer to questions submitted, the jury found that the plaintiff had an insurable interest; that Noble had orally

agreed to cover the house with insurance; that the sound value of the plaintiff's insurable interest was $3,000; and that the fire loss was $1,650.

The defendant contends that Noble was not authorized to make an oral contract of insurance upon this risk. It is clear, however, that Noble had been appointed the defendant's agent to issue and countersign policies and to collect the premiums and, having been licensed by the commissioner of insurance under G. L. (Ter. Ed.) c. 175, § 163, the defendant was "bound by the acts of the person named in the license within the scope of his apparent authority as its acknowledged agent while such license . . . [remained] in force." The jury could find that the binding of this risk was within the ostensible power of the defendant's agent. It is settled that such an agent has authority to bind his principal by making an oral contract of insurance pending the issuance of a policy. *Brown* v. *Franklin Mutual Fire Ins. Co.* 165 Mass. 565. *Green* v. *Star Fire Ins. Co.* 190 Mass. 586. *Park & Pollard Co.* v. *Agricultural Ins. Co.* 238 Mass. 187.

The statements of Noble to the plaintiff in negotiating the insurance, the entry of the binder upon his order book and his letter to the defendant's special agent, could all be found to be transactions required by the nature of the business and within the scope of his appointment. The exceptions to the introduction of such evidence are without merit. *Putnam* v. *Home Ins. Co.* 123 Mass. 324. *Emery* v. *Boston Marine Ins. Co.* 138 Mass. 398.

The defendant also contends that no oral contract of insurance was proved. Upon all the evidence the jury were warranted in finding that the defendant, through its agent, had made such a contract of insurance with the plaintiff upon his house, in the amount of $4,000, and that the risk had immediately attached and was to continue until a policy which was expected to be issued in a few days could be delivered to the plaintiff. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448. *Sanford* v. *Orient Ins. Co.* 174 Mass. 416. The fact that the plaintiff did not pay any premium is not decisive, as Noble could be found to have extended credit

to him. *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358. Upon the evidence, it is clear that the rate was not known to the parties, and Noble had written to the special agent to ascertain not only the rate but also how to describe in the policy the building which was to have different locations until it finally arrived at its destination. The building, however, was insured, when the loss occurred, for a reasonable time. An oral agreement for insurance is not rendered invalid because more information must be had before a policy can be written. *Scammell* v. *China Mutual Ins. Co.* 164 Mass. 341. *Park & Pollard Co.* v. *Agricultural Ins. Co.* 238 Mass. 187, 193. The declaration of Noble that "The building is covered" tended to show that the parties had so far as necessary agreed upon all the essential terms of their contract. "The meaning of those words ordinarily as applied to fire insurance is that the property shall be insured in the standard form of insurance from that instant for a reasonable time until either the policy or policies can be written out or their issuance approved or disapproved by authorized representatives of the insurer, or some other temporary impediment to the complete and formal contract of insurance may be removed. It constitutes insurance for a reasonable time considering all the attendant conditions." *McQuaid* v. *Aetna Ins. Co.* 226 Mass. 281, 284. *Mowles* v. *Boston Ins. Co.* 226 Mass. 426.

The defendant contends that the plaintiff had no insurable interest in the house at the time of the fire. He had acquired his rights from both the college and the contractor. Whether he had the legal or equitable title to the house before it was severed from the land — see *Shaw* v. *Carbrey*, 13 Allen, 462; *Welch* v. *McNeil*, 214 Mass. 402 — is unnecessary to decide, because it is plain that he stood in such a relation to the property that its damage or destruction would result in a financial loss to him. It is clear he had an insurable interest. *Haley* v. *Manufacturers' Fire & Marine Ins. Co.* 120 Mass. 292. *Walsh* v. *Fire Association of Philadelphia*, 127 Mass. 383. *Amsinck* v. *American Ins. Co.* 129 Mass. 185. *Washington Mills Emery Manuf. Co.*

v. *Weymouth & Braintree Mutual Fire Ins. Co.* 135 Mass. 503. *Austin* v. *Dixie Fire Ins. Co.* 232 Mass. 214. *Morrison* v. *Boston Ins. Co.* 234 Mass. 453.

The defendant contends that the failure of the plaintiff to give the sworn statement prescribed by G. L. (Ter. Ed.) c. 175, § 99, until the plaintiff mailed such a statement on May 29, 1935, bars him from recovery. If the point is open, *Harris* v. *North American Ins. Co.* 190 Mass. 361, 373, it is to be observed that this is an action on an oral agreement and not upon a policy. *Sanford* v. *Orient Ins. Co.* 174 Mass. 416, 422. Assuming that the defendant was entitled to such a statement, then it was a question of fact whether the plaintiff had used due diligence in furnishing the statement. *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382. *Smith* v. *Scottish Union & National Ins. Co.* 200 Mass. 50. *Eaton* v. *Globe & Rutgers Fire Ins. Co.* 227 Mass. 354.

The second, third and eighteenth requests, that the plaintiff's interest in the house depended upon its severance from the land at the time of the fire, were properly denied for reasons already given. The judge was right in refusing to grant the seventh, eighth, eleventh, seventeenth and twenty-eighth requests limiting the plaintiff's recovery to the amount of deposit he had paid toward the purchase of the property, or to the value of the fixtures he had bought from the college or to the value of the labor he had expended upon it. The measure of damages depended on the contract of insurance and not upon the items enumerated in these requests. The twenty-first and twenty-second requests, that there was no meeting of the minds as to the premiums or as to any contract of insurance, were rightly denied. The matter was adequately covered in the charge and the question was properly left to the jury.

The defendant's motion for a directed verdict did not specifically refer to each count in the declaration. *Gates* v. *Boston & Maine Railroad,* 255 Mass. 297, 302. Such a motion could not be granted unless the defendant was entitled to prevail on every count. *Sylvia* v. *New York, New Haven & Hartford Railroad,* 296 Mass. 157. Both

counts were alleged to be for the same cause of action. The jury were told that the question for them to decide was whether the defendant's agent made an oral contract of insurance, "that is, to place a binder on it to the effect that ultimately, when the situation as to the cost thereof or the premium to be paid was disclosed, there would be a regular policy issued to Mr. Shumway." That question was answered in the affirmative. It is clear that there was no prejudicial error in the denial of the motion, even if the plaintiff failed to prove that the term of the insurance was for a year, as alleged in the first count, *Park & Pollard Co.* v. *Agricultural Ins. Co.* 238 Mass. 187, 194, because the verdict, being general, can be supported by the second count in view of the charge and the special answer of the jury. The point is settled by *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358, 372. Judgment may be entered upon the second count. *Arlington National Bank* v. *Bennett,* 214 Mass. 352. *Gifford* v. *Eastman,* 251 Mass. 520. See Rule 53 of the Superior Court (1932).

It is unnecessary to discuss other contentions made by the defendant. We have considered all of them and find no error.

*Exceptions overruled.*